## First National Bank of Jackson v. Robinson et al.

(Decided April 17, 1934.)

782

WILLIAMS & ALLEN and A. S. JOHNSON for appellant.

G. B. STAMPER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On August 16, 1924, Peter Robinson and wife executed and delivered to the First National Bank of Jackson, Ky., a mortgage on two parcels of land to secure an indebtedness of $1,100. On August 15, 1925, they mortgaged other property to secure an indebtedness of $1,000. The indebtedness secured by the two mortgages was renewed from time to time, and was finally represented by a note for $2,200 dated January 1, 1928. The bank brought this action to recover on the note and enforce its mortgage lien, not only on the property described in the mortgages, but on another piece of property which it alleged was intended to be included in the mortgage of August 16, 1924, but was omitted therefrom by mutual mistake of the parties or mistake of the draftsman. On final hearing the petition was dismissed in so far as it sought to reform the mortgage and subject the property not included therein, and the bank appeals.

Appellant's first insistence is that there was no issue as to whether the mortgage of August 16, 1924, was

intended to include the omitted land. After setting out the mortgage of that date, the petition contains the following allegation:

> "The plaintiff further states that at the time of the said execution and delivery of the aforesaid mortgage that it was intended by the parties thereto to include in same the following described lot or parcel of land: [Then follows the description] but that same was left out of said mortgage by mutual mistake on the part of all the parties to this action and to said mortgage, and by mistake of the draftsman of said mortgage."

The answer is as follows:

> "They say it is untrue and they deny that they ever agreed and that it was ever understood by the parties to the transaction that the mortgage executed and delivered to the plaintiff on the 1st day of January, 1928, should include the following tract of land: [Then follows the description of the tract alleged to have been omitted.] They say further that the inclusion of the tract of land above described never was discussed in their presence, and they never at any time contemplated, consented, agreed or promised that said tract of land should be included in said mortgage."

It is claimed that the answer is not responsive, as it refers to a mortgage of January 1, 1928, instead of to the mortgage of August 16, 1924, referred to in the petition. The foregoing allegations follow a reference to the mortgage of August 16, 1924, and it is so clear from the answer considered as a whole that the designation of the date of the mortgage as "1st day of January, 1928," is a mere inadvertence that we are not inclined to the view that the answer is fatally defective in that respect.

Another ground of attack on the answer is that the denial "that they ever agreed and that it was ever understood" is conjunctive, and therefore no denial in law. It is true that a conjunctive denial is often held to be bad in cases where the petition alleges separate and distinct items, elements, or grounds of recovery, Allnut v. Stewart, 192 Ky. 754, 234 S. W. 439, but the situation here presented does not require the application of the rule. The expression "agreed and understood" is a common form of expression, and it is often

used to convey a single thought. Therefore a conjunctive denial is but a denial of a single allegation. Moreover, it must not be overlooked that the denial is followed by the averment "that the inclusion of the tract of land above described never was discussed in their presence, and that they never at any time contemplated, consented, agreed or promised that said tract of land should be included in said mortgage." Taken as a whole, there can be no doubt that the answer is sufficient to make an issue.

Lastly, it is claimed that the evidence authorized a reformation of the mortgage. The only two witnesses on the question were Charles Terry, president of the bank, and appellee. According to Terry, Robinson had told him that he had a house and lot at Quicksand with a dwelling and a storehouse on it, which he had bought from Jerry Edwards. He knew in a general way where the storehouse was, and Robinson explained to him that the dwelling was back of the storehouse. When the mortgage was made, he was under the impression that the lot and two houses were all one, and, with the understanding that all the property was to be good for the $600, $500 additional was loaned. After that the bank advanced additional money on the mortgage. He doubted if the property described in the two mortgages was sufficient to pay the debt. Further along Terry testified as follows:

"A. Well, you know as I stated a while ago, that my understanding from Pete was that the storehouse and the dwelling was on the same lot and that this mortgage that he brought in covered it all and I did not know that it was two separate pieces for several years afterwards.

"Q. I believe you have already stated that Mr. Robinson had already talked to you about both parcels before that? A. Yes, sir.

"Q. Now the parcel at Quicksand that is set out in the mortgage as you understand it now, just embraces the storehouse and not the dwelling? A. Yes, sir.

"Q. About how long was it after the mortgage was executed that you discovered that the lot on which the dwelling stands was not included in the mortgage? A. About the time we were going

to bring suit against Pete on notes for not paying. Which was about two or three years.

"Q. I will ask you to please state if at the time the mortgage was executed that it was your understanding and intention that the lot embracing the dwelling at Quicksand was to be included in the mortgage? [The defendants object to the foregoing question or any answer thereto.] A. Yes, sir, I thought it covered it all as he said he bought it from Jerry Edwards. And looking up the record through Roscoe Back and only finding one record, when it finally turned out there were two deeds recorded from Jerry Edwards."

According to Robinson, he owned a house and lot in Quicksand other than the house and lot mortgaged. The house and lot are about 300 yards from the mortgaged property, and are separated by houses, a water course, and also a street. He further testified as follows:

"Did you ever at any time discuss with Charles Terry, President of the Bank, or with anybody else representing the Bank, that you intended to mortgage, or would mortgage, this last named house and lot? A. I never did. I kept that for my home. I would not give a lien or mortgage on it, as I intended it for my home.

"Q. Do you mean by that that you claim your homestead exemption under law in this last named house and lot? A. Yes, sir.

"Q. It is worth exceeding $1,000.00."

It requires clear and convincing evidence to authorize the reformation of a mortgage so as to include property omitted therefrom by mistake, and, though it be the rule that the necessary evidence is not confined alone to the express statements of witnesses, but may be developed by the "character of the testimony, the coherency of the entire case, the documents, circumstances and facts which are proven," Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546, 547, it is apparent from the statements of the witnesses, as well as from all the facts and circumstances of this case, that the evidence does not come up to the required standard. Robinson is positive in his statement that the inclusion of the omitted property was never agreed to, or even discussed. Even Mr. Terry does not say

that he and Robinson ever agreed or intended to include the omitted property. His testimony goes no further than to show that he was under the impression that the mortgaged property and the omitted property were one property, and that it was his understanding that the mortgage covered it all. In its final analysis, it merely shows a mistake on the part of Terry, and falls far short of showing that the property was intended to be included in the mortgage, but was omitted therefrom by mutual mistake. It follows that reformation was properly denied.

Judgment affirmed.