### First Nat. Bank Of Grayson v. Holbrook et al.

February 8, 1949

328

H. R. Wilhoit, and J. D. Atkinson for appellant.

Arthur T. Bryson, Arthur T. Bryson, Jr., L. D. Bruce, C. H. Bruce and John F. Coldiron for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming in part, reversing in part.

The situation involved in this appeal is a somewhat complicated one, made so by the comedy of errors which seemingly has attended the case from its beginning. Appellees have not favored us with a brief to help in the unraveling process.

### Factual Background.

Prior to 1941, Ethel Whitt, then a widow with seven children all under twenty-one years of age, owned three tracts of land in Greenup County, Ky. For the purpose of identification and for future reference, these will be referred to as tract No. 1, being the Culp Creek property containing 70½ acres, tract No. 2, being part of the Pennsylvania Furnace tract and containing 5 4/10 acres, and tract No. 3, being the main Pennsylvania Furnace tract containing 112 acres. The main improvements, consisting of an eight room house, barn and other outbuildings, were located on tract No. 1 which also contained some tillable land and was the most valuable tract. Tract No. 2 was unimproved, and tract No. 3 was rough with some timber, but mostly grown up with bushes, and the only improvement on it was a three room box tenant house with a rental value of about $50 per year. On August 23, 1941, Ethel Whitt mortgaged tract No. 1 to L. G. Stapf for $489.15, his mortgage being the first lien on the property. She was also indebted to the First and Peoples Bank of Russell in the sum of $357.50 and to the Carter Dry Goods Co. of Louisville in the sum of $50, but neither of these sums was secured by mortgages or

other liens. On January 15, 1942, Ethel Whitt, still a widow, conveyed to her seven infant children tracts No. 1 and No. 2 in consideration of love and affection, reserving to herself a life estate and full control of the property during her life. Shortly after this deed was recorded, the First and Peoples Bank of Russell brought suit against Ethel Whitt and her children to whom she had conveyed this property asking that this deed be set aside as fraudulent, and the property be subjected to the payment of its debt which now included an additional sum of $110 for which the bank had attained judgment against Mrs. Whitt. By judgment entered September 24, 1942, the deed from Ethel Whitt to her children was adjudged fraudulent as to her creditors existing at the time of the transfer and was ordered set aside and the property ordered sold to satisfy the debt of the Bank and the Carter Dry Goods Co. The holder of the first mortgage, L. G. Stapf, was not made party to the suit, as he should have been, and therefore his rights were not adjudicated at this time. Both tracts No. 1 and No. 2 were sold by the Master Commissioner on November, 1942, and Ethel Whitt became purchaser of tract No. 1 for $2000 and tract No. 2 for $50, the appraised value of each tract. She executed two bonds for $1000 each, payable in six and twelve months. At the same time she executed a bond for $500, due in three months, for the purchase price of a Chevrolet truck which was included in the judgment and order of sale and which she bought at the Commissioner's sale at that price. Although the Commissioner's Report of Sale was filed November 28, 1942, and the sale bonds were executed about the same time, no motion was made to confirm the sale or to have deed executed to the purchaser.

In February 1943, when at least the $500 bond was about to become due, Ethel Whitt, who had in the meantime married Watt Holbrook, applied to the appellant herein, First National Bank of Grayson, Ky., for a loan to be secured by a mortgage. According to appellant's contention and proof, she described as the property to be mortgaged tract No. 1, the Culp Creek property, on which was located the large house and other improvements and when the bank official went to look at the property he says she showed him the house and other improvements on tract No. 1. The bank required her to

furnish it with a certificate of title prepared by an attorney of her own selection. This certificate of title, however, did not cover tract No. 1 on which the improvements were located, but covered tract No. 3 of 112 acres of a much lesser value on which there were no substantial improvements. The mortgage papers, as drawn and executed, covered only the 112 acre tract No. 3, although the officials of the bank thought it covered tract No. 1 with the improvements thereon. Appellee, Mrs. Holbrook, defaulted on her payments and suit was brought by the bank to foreclose its mortgage for $1335.25 plus interest and costs, none of which had been paid. The 112 acre tract No. 3 was sold by the Master Commissioner under judgment of the court to satisfy the debt due to the bank, and the bank became the purchaser at that sale for the sum of $1335.25, the face value of its mortgage, the property having been appraised at $1600. It was then first discovered by the bank that its mortgage, which it thought covered the more valuable tract No. 1, only covered tract No. 3, the 112 acre tract, and it had bought in the latter tract thinking all the time it had bought tract No. 1. The bank accordingly filed exceptions to the Report of Sale on the ground that the property sold had been appraised at a sum much greater than its actual value, and set out as a further ground for exception the deception which it claimed had been practiced on the bank by Mrs. Holbrook, as heretofore related. The court sustained exceptions on the latter ground, set aside the sale and gave the bank leave to file amended pleadings.

Appellant bank then started all over again by filing an amended petition making as parties defendant Ethel Whitt Holbrook, her husband, all her children and L. G. Stapf, holder of the first mortgage on tract No. 1, the Culp Creek property. The amended petition sets out in detail the alleged fraud that had been committed against the bank, as heretofore set out, describes tracts No. 1 and No. 2, which it alleges its mortgage was intended to cover, and prays that its mortgage be reformed to cover tracts No. 1 and No. 2, that the deed from Ethel Whitt to her children, heretofore referred to, be set aside and that tracts No. 1 and No. 2 be sold to satisfy its debts, interest and costs. Answer was filed denying the alleged fraud and much pleading and proof on the issues raised followed which it will not be necessary to detail here. It

is sufficient to say here that L. G. Stapf, holder of the first mortgage on tract No. 1 and who had been made a defendant in the bank's amended petition, filed his answer and cross-petition setting up his mortgage, and it was to satisfy this mortgage for $489.15 and interest that the court on February 8, 1947, by judgment ordered the sale of tract No. 1 which was covered by his mortgage. The Master Commissioner reported a sale on April 7, 1947, of said tract No. 1 to Ethel Whitt Holbrook, appellee herein, on a credit of six months for $3600, and for which she executed her bond in that amount. This sale was confirmed and Mrs. Holbrook assigned her bid to Mrs. Alice Webb, which assignment was approved by the court, Alice Webb having paid the full amount of the sale bond, an order of court directed the Master Commissioner to execute a deed to Alice Webb. Strange to say, this order for deed included tract No. 2 although only tract No. 1 had been covered by the judgment and order of sale. We assume the actual deed to Mrs. Webb covered only tract No. 1 although a copy of it is not shown in the record.

Another strange thing, the explanation of which is not shown in the record, is what became of the original sale of this property to which we have heretofore referred in this opinion? That was the sale ordered to satisfy the debts of the First and Peoples Bank of Russell and others at which sale appellee, then Ethel Whitt, became purchaser of tract No. 1 for $2000 and tract No. 2 for $50 and executed her bonds therefor. It does not appear from the record that this sale, which was made in November 1942, was ever confirmed but it does show that on January 13, 1944, the purchaser, Ethel Whitt Holbrook, filed exceptions to the original report of sale on the ground that L. G. Stapf had a mortgage on one of the tracts sold and he had not been made a party and he still had a lien on the property. If these exceptions were ever passed on and if that original sale was ever set aside, it does not so show in this record. Thus, so far as the record shows, tracts No. 1 and No. 2 were sold to Ethel Whitt in 1942 for $2050 for which she executed bonds in the sum of $2000; that without cancelling those bonds or setting aside this sale, tract No. 1 was again sold by the Commissioner under new judgment and order of court on April 7, 1947, at which time Ethel Whitt Hol-

brook became purchaser for $3600, executed a new bond therefor, then assigned her bid to Mrs. Alice Webb for $5000. It is not shown by any court order whether only the $3600 represented by the bond was paid into court or whether the $5000, paid by Mrs. Webb, was paid into court, although the record as a whole indicates that the latter sum was paid in.

Shortly after this money was paid into court, appellant instituted a new procedure to collect the debt against appellee for which it had obtained judgment in its original foreclosure suit filed herein. Appellant sought to attach so much of the fund in court as was necessary to satisfy its judgment. It supported this motion for attachment with an affidavit and executed the required bond. It also filed an amended petition setting up the facts on which it relied as the basis for the attachment. On the same day appellee Ethel Holbrook filed a motion that out of the $5000 then in court, appellant First National Bank of Grayson be paid the sum of $1400 to be applied on its debt and in satisfaction of the claim of J. H. Elam for $250 representing his commission for negotiating the sale of the real estate, purchased at the Commissioner's sale by Ethel Holbrook, to Alice Webb. This $1400 represented the difference between the $3600 she had paid for the property at the court house door and the $5000 it had been sold for to Alice Webb, which Ethel Holbrook apparently considered her own personal funds, and which she was willing to have used in payment of her debt to the appellant bank.

## Judgment Appealed From.

With all these matters before it and after a hearing and upon submission on all the proof taken in the case, the court on January 22, 1948, entered a final judgment which did these things insofar as appellant's claim is affected: (1) it refused to reform appellant's mortgage as prayed in its first amended petition of December 31, 1945, under which it sought to have tracts No. 1 and No. 2 included in its original mortgage which only covered tract No. 3; (2) it refused to sustain Mrs. Holbrook's motion to allow her to apply to appellant's debt the $1400, which she considered as hers, out of the $5000 fund paid into court by Mrs. Webb, purchaser, of tract No. 1; (3) it adjudged that appellant First National

Bank of Grayson is not entitled to have any part of the $5000 fund, now in court, applied to the payment of the judgment debt of appellant and discharged the attachment which appellant has filed against part of this fund. The judgment further ordered that no part of this fund should be distributed until the case is finally decided by the Court of Appeals. It is from this judgment that this appeal is prosecuted.

Taking up first the question of the reformation of the mortgage, we are of the opinion that the Chancellor reached a correct decision on that phase of the case. The evidence was conflicting. It is quite obvious from all this evidence that the official of the bank was under the impression that the improvements which he inspected were on the property which the mortgage was to cover. There was contrary proof by Mrs. Holbrook that she made no misrepresentation as to the location of the improvements; that she knew she did not own tract No. 1 at the time the mortgage was executed because she had previously conveyed it to her children, retaining only a life estate and therefore could not mortgage it. We think there was no meeting of the minds as to the property intended to be mortgaged, but the error resulted from a misunderstanding. It requires clear and convincing evidence to authorize the reformation of a mortgage so as to include property omitted therefrom by mistake. First National Bank v. Robinson, 253 Ky. 781, 70 S.W.2d 674. We do not think the testimony in this case meets this requirement. Then too, we cannot overlook the negligence of the bank in accepting a mortgage without a more thorough investigation of its own and a more complete examination of the title by counsel of its own selection. Any proper check of the records would have revealed that tract No. 1 on which the improvements were located was already encumbered by a mortgage to Mr. Stapf and had already been conveyed to her children by Mrs. Holbrook, then Mrs. Whitt. If anyone is to lose by the bank's failure to safeguard its own interest, it should be the bank. We think under all the facts and circumstances of this case, appellant is not entitled to a reformation of its mortgage. Appellant does not rely strongly on the prospect of this reformation and admits it is not important if its claim can be satisfied from the fund in court, in some other way.

We think the court was correct in its refusal to consider the $1400 "profit" realized in the assignment of her bid to Mrs. Webb as being the private property of Mrs. Holbrook and in refusing, on her motion, to allow it to be applied to appellant's debt. This was as much a part of the sale price as was the $3600 which Mrs. Holbrook bid at the sale to protect the property from a sacrifice sale and the entire sum she realized should inure to the benefit of those for whom she was acting, herself as a life tenant, her children as remaindermen, as held by the lower court. We do not pass on the question of whether the court may allow the $250 real estate commission out of this $1400 profit, as that question is not before us.

We think the lower court erred in that part of its judgment which decreed that appellant is not entitled to have any part of the $5000 fund now in court applied to its judgment debt. We think appellant is entitled to participate in that fund to the extent of $520 on the principle of subrogation. We think it reasonably clear from the record that appellant's money to that extent went to pay legitimate costs of administration and debts which Mrs. Holbrook was adjudged by the court to pay. Mrs. Holbrook obtained her first money, $855.25, from appellant the latter part of February 1943. Shortly after this, the $500 purchase money bond which she had executed at the time of the first sale, heretofore referred to, became due. While there is not in the record an order paying the money into court in satisfaction of this bond, the money did get into court in some way because shortly thereafter we find in the record an order of distribution which says there is in the hands of the Master Commissioner the sum of $520 and the order then makes distribution of $75.45 for costs of administration such as advertising costs, appraisers' fees, commissioners' fees, court costs, etc. Later there was a further distribution for other legitimate costs of administration and debts which had been adjudged against Mrs. Holbrook including the debts of the Carter Dry Goods Co. and of the First and Peoples Bank of Russell. It must be remembered that it was to satisfy these two latter named debts that the first sale of this property was had and that the conveyance which Mrs. Holbrook, then Mrs. Whitt, had made to her children was set aside as a fraud on these

creditors. Clearly if appellant's money went to pay these debts and the administration costs incident to their collection, as we think it did, it should be reimbursed out of the fund now in court and from which they would now have to be paid if they had not been paid with appellant's money. It is the same as though appellant's money had gone to pay off the first mortgage of Mr. Stapf which was on the property when Mrs. Whitt conveyed it to her children and to which mortgage this conveyance was, of course, subject. We therefore hold that appellant is entitled to be reimbursed from the fund in court up to $520 to make up any deficit that may result from the sale of tract No. 3 which will next be considered.

Having heretofore reached the conclusion that appellant is not entitled to a reformation of its mortgage so as to include tracts No. 1 and No. 2, it is left with its mortgage on tract No. 3. On this tract of 112 acres, appellant has the first mortgage lien to satisfy its judgment against Ethel Holbrook who alone owns this tract. Under the principle of marshalling of assets, it is appellant's duty to first exhaust the possibilities of realizing its mortgage judgment debt against this tract on which it alone has a lien before collecting its debt from the fund in court on which others have claims. Appellant already has a judgment authorizing sale of this tract and it has been sold once, but the sale was not completed because exceptions were sustained to the sale to give appellant opportunity to obtain reformation of its mortgage. It having failed in that attempt, the court can again order a resale of this property on the original judgment. Since the former appraisal of this property was in June 1945, it will, of course, have to be reappraised for the new sale. To the extent that the sale of this tract fails to satisfy appellant's judgment, appellant may participate in the fund in court to the extent of $520, as heretofore set out.

Other questions are raised by appellant by means of which it seeks to show that appellee Ethel Holbrook is entitled to a certain part of the fund in court in her own right and to that extent it may be subjected to appellant's judgment against her. One of these contentions is that Mrs. Holbrook is entitled individually to three-sevenths of value of the property which she bought at the

last sale. The basis for this claim is that at the time of that sale two of her seven children had become of age and she was no longer their legal guardian and that she had never qualified as guardian for her youngest child. It argues, therefore, that since she was not guardian as to these, she was relieved of any fiduciary or trust relationship and, therefore, to that extent the purchase of the property inured to her benefit individually. We do not believe this point is well taken whether these three children were still under a fiduciary relationship or not. At the time of the last sale they were remaindermen and after the property was sold to satisfy the debts of the mother (life tenant) and liens which were on the property when she conveyed it to them, of which appellant's debt was not one, they were entitled to this same remainder interest after such liens and debts, which had caused the conveyance to them to be set aside, were paid. We do not doubt that under certain circumstances and with permission of the court, Mrs. Holbrook could have bought this property in her individual capacity but we are not prepared to say the facts in this case justify such holding.

Appellant also contends that the transfer of tracts No. 1 and No. 2 to her children by Mrs. Holbrook having been set aside by the court as to her creditors existing at that time, this appellant should be treated as such creditor even though Mrs. Holbrook's debt to it did not exist at the time she made the alleged fraudulent conveyance. In other words, it contends that the purpose of Mrs. Holbrook in executing the deed to her children in 1942 was not only to defeat her then creditors, but to put the property beyond the reach of future creditors, of which appellant later became one. While we have held that there are circumstances under which a conveyance may be fraudulent as to subsequent as well as pre-existing creditors, as in the cases of Harlin v. Calvert's Adm'x. 253 Ky. 752, 70 S.W.2d 524, and Ball v. Brown-Ross Shoe Co., 186 Ky. 254, 216 S.W. 612, we do think the situation in this case justifies such application. When Mrs. Holbrook became indebted to appellant in 1943, she had already conveyed tracts No. 1 and No. 2 to her children more than a year before and that fact could have been easily ascertained by appellant by a cursory check of the records. Appellant cannot be heard to say that it ex-

tended credit to Mrs. Holbrook on the basis of her assumed ownership of property which the public records available to it showed she did not own. We think appellant, not then a creditor, has no right to question this conveyance. Certainly not as against the remaindermen.

Appellant further contends that if no other part of the fund in court can be subjected to the payment of its judgment, the commuted life right of Ethel Holbrook in and to the fund in question should be applied to the payment of its debt. We think the principles laid down by this court in Miracle v. Miracle, 260 Ky. 624, 86, S.-W.2d 536, 102 A.L.R. 964, are applicable here and that the life interest of Ethel Holbrook must follow the remainder interest of her children and any disposition or reinvestment of the fund in court will have to be made under the same limitations as was the real property before it was sold. If appellant's judgment or any part thereof still remains unsatisfied after applying thereto the credits heretofore allowed, appellant would be entitled to subject the income from her part of the investment to the satisfaction of its judgment debt. It would not be entitled to subject the commuted value of her life estate.

While we think it is of no concern of appellant, it contends that the mortgage debt of Stapf must be apportioned against the life estate and the remaindermen. This mortgage was placed on tract No. 1 in 1941 when Ethel Holbrook alone owned the property. Therefore when she conveyed the property in 1942, she conveyed it subject to this mortgage. Since the property was sold the last time to satisfy this mortgage, which all agree has priority over all other claims, this mortgage must be paid off in full from the fund in court and neither the mother nor the children has any interest in that part of the fund. The question of apportionment as between the life tenant and remaindermen does not arise as to the amount of this mortgage, interest and costs incident to its collection. It is a charge against the entire fund.

### Resume.

To satisfy its judgment appellant must:

(1) Sell the 112 acre tract No. 3 on which it has first mortgage.

(2) If this does not realize the amount of its debt, interest and costs, it is entitled to share the fund in court up to $520.

(3) If there still remains unpaid a portion of the judgment against Ethel Holbrook, appellant may subject the income, if any, from her invested life interest in that fund, to the satisfaction thereof.

So much of the judgment appealed from as is in accord with the views herein expressed is affirmed and is reversed as to so much thereof as is not in conformity therewith.